Filed 1/19/16  Jewish Funeral Assoc. v. Hollywood Forever CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JEWISH FUNERAL ASSOCIATION, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HOLLYWOOD FOREVER, INC., <br><br> Defendant and Respondent. | B260906 <br><br> (Los Angeles County <br> Super. Ct. No. BC531702) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge.  Reversed and remanded with directions.

Rosario Perry for Plaintiff and Appellant.

Raines Feldman and Sonia Y. Lee for Defendant and Respondent.

_____

# INTRODUCTION

In 1999 Jewish Funeral Association, LLC contracted with Hollywood Forever, Inc. to purchase cemetery plots. Although the Association wanted double-depth graves, the contract did not make it clear whether the graves would be single-depth or double-depth. Apparently, the graves were not needed until 2012, when for the first time Hollywood Forever advised the Association that the graves would be single-depth. The Association filed this action in 2013 for declaratory relief, specific performance, and breach of contract. The trial court sustained Hollywood Forever's demurrer without leave to amend on the ground that the Association's claims were barred by the statute of limitations. We reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

In its operative first amended complaint, the Jewish Funeral Association alleges that in May 1999 it entered into a written contract with Hollywood Forever for the purchase of 60 "double depth graves" in Hollywood Forever's cemetery.[1] The total purchase price was $200,000. The Association made a down payment of $50,000, and agreed to pay the remaining balance of $150,000 in 18 monthly payments of $8,333.33.

The 1999 agreement, which was attached to the first amended complaint, was entitled "Purchase Agreement of Cemetery property" and was signed by both parties. It identified the Association as the purchaser of 60 graves, although there was no indication

---

[1] We assume all of the factual allegations in the first amended complaint are true. (See *Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 566, fn. 1.)

2

whether the graves were to be single-depth or double-depth. The agreement stated that the price of the graves was contingent on the Association and the families it represented purchasing from the Hollywood Funeral Home at least 75 percent of the funerals for the interment spaces, purchasing from Hollywood Forever a monument or memorial for each grave, and not reselling or brokering the spaces.

Paragraph 4 of the agreement's standard terms and conditions provided, in part, that Hollywood Forever, upon receiving the purchase price, would execute and deliver to the Association "a good and sufficient certificate or deed conveying the interment rights in [the] cemetery property, and a certificate setting forth the amount deposited . . . in connection with the purchase of said property." Paragraph 14 stated: "Right to Correct Errors: The Cemetery may correct any errors herein by providing a corrected copy to the Purchaser." Paragraph 16 provided: "Cemetery Acceptance Required: This agreement must be first signed by the Purchaser and sent to the Cemetery office in California where it shall be accepted or declined. Acceptance shall be by the signing of the agreement by an authorized Officer of the Cemetery at its office in California, which shall be the place of contracting. If the offer is not acceptable it shall be returned unsigned by the Cemetery and any deposit shall be refunded."

When, after a brief delay, the graves "became ready for burial" in 2000, the parties agreed that Hollywood Forever would sell and issue deeds for only 25 graves, rather than 60, and that the Association had paid for those 25 graves in full. The deeds Hollywood Forever sent to the Association, however, "incorrectly reflected that [the] 25 graves . . . were single depth, not double depth. This was a clerical error, which was later corrected."

In April 2002 Hollywood Forever wrote to the Association and stated that if the Association "agreed to an amended contract," Hollywood Forever would return an executed new contract and deeds for double-depth graves. An officer of Hollywood Forever wrote to the Association: "If you agree to the new contract, please send the old

3

deeds of trust in the self addressed envelope and I will return[ to you a] new signed contract, along with the new deeds showing the double interment privilege clause."

Hollywood Forever sent a new contract, which the Association describes as the 2002 "clarification and amendment." The Association signed this document and returned it to Hollywood Forever. The 2002 agreement, which was also attached to the first amended complaint, was entitled "Purchase and Security Agreement – replaces deeds issued 10/27/2000." It specifies the purchase of graves "1 through 25 (Double Depth)" and included the type-written language "[f]rom single to Double Depth." The agreement also provided that interment services, vault setting, memorial setting, and memorial care "will be priced as fees required at time of burial."

The Association further alleged that Hollywood Forever "has recognized and agreed that the original deeds should have been issued and recorded as double depth graves. The original sale was for double depth graves, and [Hollywood Forever] erroneously issued the deeds as single depth. Therefore, [Hollywood Forever's] issuing deeds to reflect the graves as double depth is a correction in order to conform to the original purchase and security agreement, and the . . . 2002 amendment clarifying the double depth intent of the original contract."

Apparently, nothing happened for many years. The Association does not allege that Hollywood Forever sent new or corrected deeds reflecting double-depth graves, or that the Association had any need to bury anyone in one of the graves. Finally, in August 2012 a representative of Hollywood Forever met with a representative of the Association and apologized for Hollywood Forever's mistake in not issuing and recording deeds for double-depth graves, and "orally agreed" that the Association "had the right to the 25 double depth graves based on the 1999 and 2002 agreements." In fact, on August 20, 2012 Hollywood Forever corrected one of the 25 deeds to reflect that grave as a double-depth grave.

4

By the next day, however, Hollywood Forever had changed its mind. On August 21, 2012 Hollywood Forever wrote the Association a letter stating that the Association had "violated the terms of the contract by allegedly not returning the . . . 2002 clarification [agreement] to [Hollywood Forever]." The Association alleged that Hollywood Forever anticipatorily breached the 1999 and 2002 agreements by "fail[ing] to correct the remaining [24] deeds to reflect the correct status of those graves as 'Double Depth,' continuing to refuse to correct the deeds, and failing to honor double depth burials since August 2012."

The Association filed this action in December 2013. The first cause of action of the operative first amended complaint was for declaratory relief and sought several judicial determinations of the rights of the parties and resolution of several controversies. The first controversy was over the parties' rights in connection with the 1999 and 2002 agreements regarding the sale of double-depth graves. The second controversy was over the legality under federal law of Hollywood Forever's requirement that buyers of graves in its cemetery "purchase goods (such as outer burial container, monument or memorial, flower vase, floral arrangement, and urn) directly from Hollywood Forever Cemetery," which the Association claimed violated the Federal Trade Commission's "Funeral Rule."[2] In its second cause of action for specific performance, the Association sought an

---

[2] "[T]he Funeral Rule requires funeral service providers give consumers, at the beginning of funeral planning discussions, a general price list (GPL) detailing the retail price of the services and goods sold. The prices of caskets and outer burial containers are also to be disclosed. At the end of the discussion, consumers are to be given a final statement of goods and services. Further, prices must be revealed when consumers make telephone inquiries. [Citations.] Additionally, funeral service providers are prohibited from bundling pricing packages, requiring the purchase of a casket for direct cremations, 'conditioning the purchase of funeral goods or services on the purchase of any other goods or service' [citations], and embalming the body without obtaining approval." (*Baudino v. SCI California Funeral Services, Inc.* (2008) 169 Cal.App.4th 773, 783, fn. omitted.)

order directing Hollywood Forever to deliver double-depth deeds for the remaining 24 graves. And in its third cause of action for breach of contract, the Association alleged that Hollywood Forever breached the 1999 agreement, the 2002 agreement, and a 2012 oral agreement "by failing to correct the status of the graves to 'Double Depth,' continuing to refuse to correct the deeds, and failing to honor double depth burials since August 2012."

Hollywood Forever demurred to the first amended complaint, arguing, among other things, that all three causes of action were barred by the applicable statutes of limitations. Hollywood Forever argued that claims based on the 1999 agreement were barred because the Association alleged that the breach occurred in 2000, when Hollywood Forever issued deeds for single-depth graves rather than double-depth graves, so that the statute of limitations expired four years later in 2004. Hollywood Forever argued that claims based on the 2002 agreement were also barred because Hollywood Forever never signed it and therefore it was "not a valid and enforceable written contract."

The trial court, in a signed order, found that all three causes of action were "time-barred by the applicable statute of limitations" and that amendment could not cure the defects. The court sustained the demurrer without leave to amend and dismissed the action with prejudice. The Association timely appealed.[3]

---

[3] "A signed order of dismissal is an appealable judgment." (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81, fn. 3; see Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1).)

6

**DISCUSSION**

A.      *Standard of Review*

"We review an order sustaining a demurrer de novo, and we assume the truth of all properly pleaded facts unless contradicted by judicially noticed facts. [Citation.] When the demurrer is sustained without leave to amend, we review the determination that no amendment could cure the defects for abuse of discretion." (*Doe v. Superior Court* (2015) 237 Cal.App.4th 239, 243.) "The trial court errs in sustaining a demurrer 'if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment.' [Citation.] 'To meet the . . . burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court.' [Citation.] Logically, this showing can be made by materials in the record." (*Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32, 36-37.) "If the complaint states any possible legal theory, the trial court's order sustaining the demurrer must be reversed. [Citation.] Also, 'if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend.' [Citation.] Whether a plaintiff will be able to prove its allegations is not relevant. [Citation.]" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057.) We also "'liberally construe [the] complaint, and draw all reasonable inferences in favor of its allegations.'" (*Coleman v. Medtronic, Inc.* (2014) 223 Cal.App.4th 413, 422.)

""""A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.'"""" (*Lee v. Hanley*

7

(2015) 61 Cal.4th 1225, 1232; see *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1262 ["[g]enerally, a demurrer may only be sustained on statute of limitations grounds if the 'complaint disclos[es] on its face that the limitations period has expired'"].) "'Questions concerning whether an action is barred by the applicable statute of limitations are typically questions of fact.'" (*Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196, 1207.)

B.      *The Trial Court Erred in Sustaining the Demurrer to the Breach of Contract and Declaratory Relief Causes of Action*

The trial court ruled that all three causes of action in the first amended complaint were barred by the statute of limitations.  None is.

"The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues.  [Citations.]  Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.'  [Citations.]  This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.'" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; see *Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 683 ["[a]s a general rule, statutes of limitations begin to run once every element of a cause of action has occurred"].)

In its breach of contract cause of action, the Association alleged that Hollywood Forever breached the 1999 agreement in three ways:  (1) failing to correct the deeds to show double-depth graves rather than single-depth graves, (2) continuing to refuse to correct the deeds, and (3) failing to honor double-depth burials.  Hollywood Forever argues that the four-year statute of limitations for breach of written contract in Code of Civil Procedure section 337 barred the Association's claim because, according to the allegations in the first amended complaint, Hollywood Forever breached the 1999 agreement in October 2000 when it issued deeds for single-depth graves rather than

8

double-depth graves.  Perhaps.  But at most that would only be true for breaches (1) and perhaps (2), and not breach (3).  The Association alleged that it was not until 2012 that Hollywood Forever told the Association that it would not provide double-depth graves.  There is no allegation that Hollywood Forever ever actually refused to deliver double-depth graves.  (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 488 ["[a] cause of action for breach of contract does not accrue before the time of breach"].)

According to the allegations in the first amended complaint, the earliest possible date for accrual for breach (3) was Hollywood Forever's repudiation or anticipatory breach in August 2012, approximately a year and one-half before the Association filed this action and well within the statute of limitations.  Even then, however, such an anticipatory breach would not necessarily start the running of the statute of limitations.  Where a promisor merely announces that it will not honor a promise, "such a repudiation may constitute an *anticipatory* breach, giving the aggrieved promisee the *option* of suing immediately.  [Citation.]  But it does not accelerate the accrual of a cause of action for limitations purposes; the promisee remains entitled to wait until performance is due and the promisor has failed to perform, i.e., to do the thing promised."  (*McCaskey v. California State Auto. Assn.* (2010) 189 Cal.App.4th 947, 958; see *Romano v. Rockwell Internat., Inc.*, *supra*, 14 Cal.4th at p. 489 ["whether the breach is anticipatory or not, when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract"]; *Taylor v. Johnston* (1975) 15 Cal.3d 130, 137 ["[w]hen a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time"].)  Thus, the Association could have waited to file suit until Hollywood Forever actually failed to deliver double-depth graves, if it ever did.

9

Hollywood Forever also argued in the trial court and argues on appeal that the Association cannot state a claim for breach of the 1999 agreement because the Association claimed the 2002 agreement superseded the 1999 agreement, and the Association cannot state a claim for breach of the 2002 agreement because it was not signed. Putting aside the circularity of this argument, the 2002 agreement, signed or unsigned, does not bar the Association's claim for breach of the 1999 agreement. Paragraph 14 of the 1999 agreement provides that Hollywood Forever has the right to correct any errors by providing a corrected copy of the agreement to the Association. This is exactly what the Association alleged Hollywood Forever did by sending the 2002 agreement to correct the "clerical error" in the 1999 agreement of failing to specify double-depth graves. Thus, the Association stated a (timely) claim for breach of the 1999 agreement regardless of whether the 2002 agreement was separately enforceable.

Which it is, according to the allegations of the complaint. True, the copy of the 2002 agreement attached to the first amended complaint is not signed by a representative of Hollywood Forever, and under paragraph 15 of that agreement (paragraph 16 of the 1999 agreement) Hollywood Forever accepts by signing the agreement. But that only means that the Association did not have a signed copy in its possession. Discovery may reveal that Hollywood Forever never signed the 2002 agreement, although the allegations regarding the August 2012 meeting and the correction of one deed on August 20, 2012 to double-depth suggest that Hollywood Forever believed it had signed the 2002 agreement. (See *Eisert v. Archdiocese of Santa Fe* (N.M. Ct. App. 2009) 146 N.M. 179, 184 [207 P.3d 1156] [extrinsic evidence is admissible to determine whether contract with cemetery was for single-depth or double-depth graves].) In any event, that issue cannot be decided on demurrer. Hollywood Forever's assertion that it did not sign the 2002 agreement relies on evidence outside the allegations in the first amended complaint. (See *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1426 [trial court properly overruled demurrer that was based on evidence that was outside the pleadings and not subject to judicial notice]; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181

10

Cal.App.4th 471, 482 ["[b]ecause a demurrer challenges defects on the face of the complaint, it can only refer to matters outside the pleading that are subject to judicial notice"].)[4] Moreover, paragraph 15 of the 2002 agreement provides that if Hollywood Forever decided not to accept the agreement, it had to return the agreement unsigned and refund the deposit, and the Association does not allege that either of these events occurred.

The Association's cause of action for declaratory relief is not barred by the statute of limitations because its breach of contract cause of action is not barred. (See *Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196, 1208 ["[t]he duration of the limitations period applicable to a declaratory relief action is determined by the nature of the underlying obligation sought to be adjudicated"]; cf. *Maguire v. Hibernia Savings & Loan Society* (1944) 23 Cal.2d 719, 734 ["if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred"].) Moreover, the Association sought declaratory relief on an issue that has nothing to do with double-depth graves and that Hollywood Forever did not even address in its demurrer: the two agreements' alleged violation of the Federal Trade Commission's Funeral Rule. The Association sought a declaration that its families, when the time comes to bury their loved ones in whatever grave is available after the merits of this litigation are resolved, do not have to purchase

---

4       Hollywood Forever did not ask the trial court to take, does not ask this court to take, nor could we take, judicial notice of the fact that Hollywood Forever signed or did not sign the 2002 agreement. (See *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4h 1137, 1145 ["the existence of a contract between private parties cannot be established by judicial notice"].) Hollywood Forever argues only that its signature does not appear on the copy of the agreement attached to the complaint.

Hollywood Forever's funeral goods and services. The Association is entitled to seek this declaration without alleging that this alleged violation of federal law has occurred. (See *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 883 ["[a] party may seek declaratory relief before there has been an actual breach of an obligation; in such cases the limitations period still does not begin to run until the breach occurs"].) And the trial court cannot sustain Hollywood Forever's demurrer to some but not all of the declaratory relief cause of action. (See *Ellena v. Department of Insurance* (2014) 230 Cal.App.4th 198, 217 ["'[a] demurrer does not lie to a portion of a cause of action'"]; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 ["[a] demurrer must dispose of an entire cause of action to be sustained"].)

C.      *The Trial Court Erred in Sustaining the Demurrer to the Specific Performance Cause of Action Without Leave to Amend*

Specific performance is a remedy for breach of contract, not a cause of action. (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 49; *Miller v. Dyer* (1942) 20 Cal.2d 526, 531.) This pleading defect in the Association's first amended complaint, however, is curable. Although the Association cannot maintain a cause of action for specific performance, it can amend to allege specific performance as a remedy for its breach of contract and declaratory relief causes of action.

**DISPOSITION**

The judgment is reversed and remanded with directions to vacate the order sustaining the demurrer to the first amended complaint without leave to amend, and to enter an order overruling the demurrer to the first cause of action for declaratory relief

and third cause of action for breach of contract, and sustaining the demurrer to the second cause of action for specific performance with leave to amend.  The Association is to recover its costs on appeal.


SEGAL, J.

We concur:



PERLUSS, P.J.



BLUMENFELD, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.